# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                     No. CR 20-0221 JB

ROBERT TRUJILLO,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Amended Petition for Revocation of Supervised Release, filed July 27, 2020 (Doc. 39). The Court held an evidentiary revocation hearing on August 31, 2020. Violation of Supervision Proceedings Minute Sheet, filed August 31, 2020 (Doc. 53); Notice of Hearing on August 31, 2020, filed August 4, 2020 (Doc. 138)(text-only entry). The primary issues are: (i) whether the preponderance of the evidence supports that Defendant Robert Trujillo's alleged conduct -- punching his girlfriend, J. Trujillo, on the nose and threatening her with an AK47 rifle -- constitutes battery of a household member, and therefore violates the supervised release condition that he not commit a federal, state, or local crime; and (ii) whether the preponderance of the evidence supports that R. Trujillo's failed five drug tests for illegal controlled substances since he began supervised release, establishes that R. Trujillo violated the supervised release condition that he refrain from any unlawful use of a controlled substance. The Court concludes that: (i) the evidence is insufficient to support a determination that R. Trujillo committed a federal, state, or local crime by allegedly punching J. Trujillo on the nose and threatening her with an AK47 rifle; and (ii) the preponderance of the evidence establishes that R. Trujillo failed five drug tests for illegal controlled substances and thus violated the mandatory

- 1 -

condition that he refrain from unlawfully using controlled substances.  Accordingly, because R. Trujillo committed a Grade C Violation and has a criminal history category of IV, the United States Sentencing Guidelines recommend a range of 6 to 12 months imprisonment.

## PROCEDURAL BACKGROUND

On July 9, 2019, R. Trujillo was incarcerated in the Santa Fe County Detention Center, in Santa Fe, New Mexico, for a state probation violation.  See Criminal Complaint ¶¶ 4-5 at 2, filed September 4, 2019 (Doc. 1)("Criminal Complaint"); Plea Agreement at 5, filed January 22, 2020 (Doc. 26).  Two days later, on July 11, 2019, a corrections officer searched R. Trujillo and found strips of Suboxone (buprenorphine), a controlled substance.  See Criminal Complaint ¶¶ 6-7 at 3; Plea Agreement at 5-6.  On January 22, 2020, R. Trujillo pled guilty to possession with intent to distribute Suboxone, Count 1, and possessing contraband in prison, Count 2.  See Plea Minute Sheet, filed January 22, 2020 (Doc. 28); Plea Agreement at 5-6.  On April 27, 2020, the Court sentenced R. Trujillo to two concurrent terms of imprisonment of 7 months and nine days, or time served, whichever was less, and placed him on three years of supervised release.  See Sentencing Minute Sheet, filed April 27, 2020 (Doc. 32); Judgment, filed May 1, 2020 (Doc. 33).

On June 30, 2020, while R. Trujillo was on supervised release, the United States Probation Office ("USPO") filed a report, alleging R. Trujillo had twice tested positive for opiates on urinalysis tests.  Report on Offender Under Supervision No Court Action Recommended at 1, filed June 30, 2020 (Doc. 34)("Noncompliance Summary").  The Noncompliance Summary alleged R. Trujillo had admitted to using heroin on June 19, 2020.  See Noncompliance Summary at 1. The Noncompliance Summary recommended that the Court take no action.  See Noncompliance Summary at 2.

On July 13, 2020, the USPO filed a petition with the Court, alleging that R. Trujillo had

violated his conditions of supervised release by testing positive for illegal controlled substances.
See Petition for Revocation of Supervised Release, filed July 13, 2020 (Doc. 35)("Petition").  In
the Petition, the USPO alleges R. Trujillo has violated a condition of his supervised release: "You
must refrain from any unlawful use of a controlled substance."  Petition at 1.  The USPO alleges
that R. Trujillo tested positive five times for illegal controlled substances since June 19, 2020.
Petition at 1.  The Petition alleges that three urine samples taken on June 26, June 28, and July 8,
2020, had all tested positive for opiates, with one of those samples testing positive for morphine
and codeine.  See Petition at 1.  The Petition further alleges R. Trujillo did not have a valid
prescription to substantiate any of the positive results.  Petition at 1.

The Court issued an arrest warrant for R. Trujillo.  Arrest Warrant, filed July 21, 2020
(Doc. 37); Sentencing Memorandum at 1-2, filed August 26, 2020 (Doc. 50); Amended Petition
for Revocation of Supervised Release at 2, filed July 27, 2020 (Doc. 39)("Amended Petition").

### 1.     The Amended Petition for Revocation of Supervised Release.

On July 27, 2020, the USPO filed an Amended Petition for Revocation of Supervised
Release.  Amended Petition.   In the Amended Petition, in addition to alleging that R. Trujillo
tested positive five times for illegal controlled substances, the USPO alleges that R. Trujillo has
violated another condition of his supervised release: "You must not commit another federal, state,
or local crime."  Amended Petition at 2.  The Amended Petition alleges that the State of New
Mexico arrested and charged R. Trujillo with battery against a household member.  Amended
Petition at 2.  Specifically, the Amended Petition alleges that R. Trujillo punched his girlfriend, J.
Trujillo, on the nose, that she had dry blood on the bottom of her nose and left sleeve, and that she

was locked in a car and unable to get out because, R. Trujillo had an AK47 rifle and was threatening to kill her.  See Amended Petition at 2.

The Amended Petition states that R. Trujillo's maximum statutory penalty is two years imprisonment and lifetime supervised release, and the revocation range of imprisonment is between 6 and 12 months.  See Amended Petition at 2.

### 2.   **The Hearing.**

The Court held an evidentiary revocation hearing on August 31, 2020.  See Violation of Supervision Proceedings Minute Sheet, filed August 31, 2020 (Doc. 53); Notice of Hearing on August 31, 2020, filed August 4, 2020 (Doc. 138)(text-only entry).  At the hearing, R. Trujillo stated that he intended to deny the Amended Petition's allegations.  See Transcript of Hearing at 4:25-5:5 (taken August 31, 2020)(Court, Pugh)("Tr.").[1]

The United States called only one witness, Robert Vigil, R. Trujillo's federal probation officer, to testify.  See Tr. at 5:8-6:5 (Court, Castellano).  The United States did not call J. Trujillo. See Tr.  at 1-26.  The United States sought to admit R. Trujillo's five positive urinalysis test results. See Tr. at 12:21-24 (Castellano).  R. Trujillo did not object to the admission of the urinalysis test results, and the Court admitted the test results.  See Tr. at 13:22-25 (Court, Pugh); U.S. Probation and Pretrial Services Test Result Final Report at 1-5 (August 31, 2020)(United States Hearing Exhibit 1)(" Test Results").  The United States also sought to admit a State of New Mexico criminal complaint alleging that R. Trujillo committed battery against a household member.  See Tr. at 12:21-24 (Castellano).  The state criminal complaint alleges that R. Trujillo committed battery against a household member when he "punched [J. Trujillo] on the nose" causing her to bleed, and

---

[1]The Court's citations to the transcripts of each hearing in this Memorandum Opinion and Order refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

that J. Trujillo "was unable to exit [a] car because her boyfriend Robert Trujillo ha[d] an AK47 rifle and [was] threatening to kill her." State of New Mexico Criminal Complaint at 1 (dated August 31, 2020)(United States Hearing Exhibit 2)("New Mexico Complaint").   R. Trujillo objected both to the admission of the New Mexico Complaint and Vigil's testimony describing the alleged altercation between R. Trujillo and J. Trujillo.   See Tr. at 9:5-10:16 (Castellano, Vigil, Pugh, Court); id. at 13:8-21 (Castellano, Vigil, Pugh, Court).   The Court provisionally admitted the New Mexico Complaint and related testimony, stating that it needed to take the issue under advisement determine whether the evidence was admissible.   See Tr. at 10:10-16 (Court); id. at 14:1-4 (Court).   The Court concluded the hearing by stating that it needed take the matter under advisement to determine whether R. Trujillo violated the mandatory supervised release conditions. See Tr. at 25:25-26:17 (Court).

## FINDINGS OF FACT

The Court held an evidentiary hearing on the revocation of supervised release.   See Violation of Supervision Proceedings Minute Sheet; Notice of Hearing on August 31, 2020.   The Court makes the following findings of fact related to the issues.   Rule 12(d) of the Federal Rules of Criminal Procedure requires the Court to state its essential findings on the record when deciding a motion that involves factual issues.   See Fed. R. Crim. P. 12(d) ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record.").   The findings of fact in this Memorandum Opinion and Order shall serve as the Court's essential findings for rule 12(d)'s purposes.   In making these findings, the Court does not consider any evidence or testimony from the hearing that violates the balancing test that the United States Court of Appeals for the Tenth Circuit adopted in United States v. Jones, 818 F.3d 1091, 1098 (10th Cir. 2016).   See United States v. Hernandez, 428 F. Supp. 3d 775, 788 (D.N.M.

2019)(Browning, J.)("When applying the balancing test, the Court must weigh the defendant's interest in cross-examining and confronting [a] witness with the government's good cause for not presenting the witness.")(citing United States v. Jones, 818 F.3d at 1098)).  Accordingly, the Court finds:

1.      On January 22, 2020, R. Trujillo entered a plea agreement in which he pled guilty to possession with intent to distribute Suboxone, Count 1, and possessing contraband in prison, Count 2.  See Plea Minute Sheet at 1; Plea Agreement ¶¶ 3, 11-12 at 2, 5-6.

2.      On April 27, 2020, the Court sentenced R. Trujillo to two concurrent terms of imprisonment of 7 months and nine days, or time served, whichever is less, and placed him on three years of supervised release.  See Sentencing Minute Sheet at 1; Judgment at 3.

3.      R. Trujillo's supervised release contains a mandatory condition that he "must refrain from any unlawful use of a controlled substance."  Judgment at 4.

4.      R. Trujillo's supervised release contains a mandatory condition that he "must not commit another federal, state, or local crime."  Judgment at 4.

5.      R. Trujillo began his term of supervised release on April 27, 2020.  See Post Conviction Violation Report at 1, filed July 15, 2020 (Doc. 36).

6.      R. Trujillo tested positive for opiates on five urinalysis tests on June 19, June 24, June 26, June 28, and July 8, 2020.  See Tr. at 6:8-12; 7:8-11 (Castellano, Vigil); U.S. Exhibit 1 at 1-5.

7.      R. Trujillo's July 8, 2020 urinalysis test showed positive for codeine and morphine. See Tr. at 8:11-24 (Castellano, Vigil).

8.      R. Trujillo did not have a prescription to substantiate any of the positive test results. See Tr. at 8:25-9:1-4 (Castellano, Vigil).

9.    R. Trujillo admitted to using heroin while on supervised release to his federal probation officer.  See Tr. at 7:16-8:10. (Castellano, Vigil).

10.    The Court concludes that R. Trujillo violated his supervised release condition that he "must refrain from any unlawful use of a controlled substance."

**RELEVANT LAW REGARDING THE SENTENCING GUIDELINES**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L No. 98-473, 98 Stat. 1976, thus making the Guidelines sentencing ranges effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four statutorily defined purposes that 18 U.S.C. § 3553(a)(2) enumerates:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2).

[A] defendant who has been found guilty of an offense described in any Federal

statute . . . shall be sentenced in accordance with the provisions of this chapter so
as to achieve the purposes set forth in subparagraphs (A) through (D) of section
3553(a)(2) to the extent that they are applicable in light of all the circumstances of
the case.

18 U.S.C. § 3551(a).  To achieve these purposes, § 3553(a) directs sentencing courts to consider:

(i) the Guidelines; (ii) the offense's nature, and the nature of the defendant's character; (iii) the

available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit

similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States

Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C.

§ 3553(a)(1), (3)-(7).

Although the Guideline sentences are no longer mandatory, both the Supreme Court and

the Tenth Circuit have clarified that, while the Guidelines are one of several factors which

§ 3553(a) enumerates, they are entitled to careful consideration.  See Rita v. United States, 551

U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission

examined tens of thousands of sentences and worked with the help of many others in the law

enforcement community over a long period of time in an effort to fulfill [its] statutory mandate.");

United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than

"just one factor among many"), overruled on other grounds by Gall v. United States, 552 U.S. 35

(2007).  The Guidelines are significant, because "the Guidelines are an expression of popular

political will about sentencing that is entitled to due consideration . . . [and] 'represent at this point

eighteen years' worth of careful consideration of the proper sentence for federal offenses.'"  United

States v. Cage, 451 F.3d at 593 (quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir.

2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349).  A reasonable

sentence is one that "avoid[s] unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  See United

States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d at 1264. This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 350-51 (repeating that the presumption of reasonableness "is an *appellate* court presumption")(emphasis in original); United States v. Conlan, 500 F.3d 1167, 1169-70 (10th Cir. 2007)(stating that "the government rightly concedes the district court erred in affording a presumption of reasonableness to the recommended advisory sentence," because "the guideless are presumptively reasonable only at the appellate level"). Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[2] Guidelines sentence. See Kimbrough v. United States, 552 U.S. at 90-

---

[2]Attorneys and courts often say that the "Guidelines" are advisory, Gall v. United States, 552 U.S. at 46 ("As a result of our decision [in United States v. Booker, 543 U.S. 220 (2005)], the Guidelines are now advisory . . . ."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."), but it appears more appropriate to say that the resulting Guidelines ranges are advisory. The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-*Booker* have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from

91; Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13,

---

> the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

> . . . .

> The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. 2014)(Browning, J.).

2008)(Browning, J.).  The Supreme Court has recognized, however, that sentencing judges are "'in a superior position to find facts and judge their import under § 3553(a)' in each particular case." Kimbrough v. United States, 552 U.S. at 89 (quoting Gall v. United States, 552 U.S. at 51).  Accord United States v. Lewis, 398 F. Supp. 3d 945, 967 (D.N.M. 2019)(Browning, J.).

### LAW REGARDING SUPERVISED RELEASE REVOCATION AND REVOCATION HEARINGS

Subsection (e)(3) of § 3583 of Title 18 of the United States Code permits courts to revoke supervised release after concluding that the defendant violated a condition of probation by a preponderance of the evidence.  See 18 U.S.C. § 3583(e).  Section 3583(e)(3) sets forth the process for revoking supervised release:

> (e)     **Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --
>
> . . . .
>
> > (3)     revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case. . . .

18 U.S.C. § 3583(e)(bold in original).  "Preponderance of evidence is evidence sufficient to persuade you that a fact is more likely present than not present." Tenth Circuit, Criminal Pattern Jury Instructions at § 1.05.1 (2011)(Updated Feb. 2018). See "Preponderance of the Evidence," Black's Law Dictionary (10th ed. 2014)("Preponderance of the evidence" means: "The greater

weight of the evidence, not necessarily established by the greater number of witnesses testifying

to a fact but by evidence that has the most convincing force; superior evidentiary weight that,

though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline

a fair and impartial mind to one side of the issue rather than the other.").

"The Sixth Amendment [to the Constitution of the United States of America] is a trial right

and does not apply to pretrial proceedings." United States v. Hernandez, 778 F. Supp. 2d 1211,

1225 (D.N.M. 2011)(Browning, J.). The Tenth Circuit has suggested that the Sixth Amendment

applies only to trial proceedings. See United States v. Bustamante, 454 F.3d 1200, 1202 (10th Cir.

2006). Rule 32.1 of the Federal Rules of Criminal Procedure gives the defendant at the revocation

hearing, however, "an opportunity to appear, present evidence, and question any adverse witness

unless the court determines that the interest of justice does not require the witness to appear."

Fed. R. Crim. P. 32.1(b)(2)(c). The rule's notes instruct courts to apply a balancing test that weighs

"the person's interest in the constitutionally guaranteed right to confrontation against the

government's good cause for denying it." Rule 32.1 Advisory Committee's Note to the 2012

Amendment. The Tenth Circuit has adopted this balancing test "when determining a releasee's

confrontation rights at a revocation hearing." United States v. Jones, 818 F.3d at 1099. See United

States v. Hernandez, 428 F. Supp. 3d at 788 ("When applying the balancing test, the Court must

weigh the defendant's interest in cross-examining and confronting [a] witness with the

government's good cause for not presenting the witness." (citing United States v. Jones, 818 F.3d

at 1098)).

## ANALYSIS

The Court concludes that R. Trujillo violated the mandatory condition of his supervised

release that he "must refrain from any unlawful use of a controlled substance." Judgment at 4. The

Court concludes that the evidence is insufficient to support determinations that that R. Trujillo violated a federal, state, or local offense. The Court, therefore, concludes that because R. Trujillo committed a Grade C Violation and has a criminal history category of IV, the Guidelines recommend a range of 6 to 12 months imprisonment.

I.    **THE COURT CANNOT CREDIT PROPERLY EITHER VIGIL'S TESTIMONY OR THE NEW MEXICO COMPLAINT, AND, THEREFORE, DOES NOT FIND BY A PREPONDERANCE OF THE EVIDENCE THAT R. TRUJILLO COMMITTED A FEDERAL, STATE, OR LOCAL CRIME.**

At the revocation hearing, the United States presented evidence -- Vigil's testimony and the New Mexico Complaint -- that R. Trujillo had threatened J. Trujillo with an AK47 rifle and punched her on the nose. See Tr. at 9:9-18 (Castellano, Vigil); id. at 10:21-13:18 (Castellano, Vigil); New Mexico Complaint at 1. The United States did not call J. Trujillo as a witness, and R. Trujillo objected to both Vigil's testimony and the introduction of the New Mexico Complaint because he was not able to confront J. Trujillo. See Tr. at 9:5-23 (Castellano, Vigil, Pugh, Court); id. at 13:13-21 (Pugh, Court, Castellano). The Court concludes that, under the United States v. Jones balancing test, it cannot credit properly either the testimony or the New Mexico Complaint. See United States v. Jones, 818 F.3d at 1098.

Rule 32.1(b)(2)(C) of the Federal Rules of Criminal Procedure requires the Court to apply a balancing test to determine whether it may consider hearsay evidence for revocation purposes. Fed. R. Crim. P. 32(1)(b)(2)(C). See United States v. Jones, 818 F.3d at 1098. When applying the balancing test, the Court must weigh the defendant's interest in cross-examining and confronting the witness with the government's good cause for not presenting the witness. See, e.g., United States v. Jones, 818 F.3d at 1098 (citing Rule 32.1's Advisory Committee Note to the 2002 Amendment); United States v. Henry, 852 F.3d 1204, 1208 (10th Cir. 2017)(explaining that a district court cannot conclude the "interest of justice," rule 32.1(b)(1)(B)(iii), provides reason to

deny the defendant's confrontation right to cross-examine an adverse, absent witness without engaging in the United States v. Jones, 818 F.3d at 1098, balancing test); United States v. Hernandez, 428 F. Supp. 3d at 788-90 (excluding testimony that failed the United States v. Jones, 818 F.3d at 1098, balancing test)(Browning, J.).

R. Trujillo, like any defendant, has an interest in confronting and cross-examining individuals testifying against him, and he has a strong interest in confronting and cross-examining J. Trujillo.   See United States v. Jones, 818 F.3d at 1099-1100.  Like the defendant in United States v. Jones, R. Trujillo has a strong interest in confronting J. Trujillo, because of two "textbook bases for cross-examination": (i) "testing [her] ability to perceive," and (ii) "exploring possible bias" because of her relationship with R. Trujillo.  United States v. Jones, 818 F.3d at 1101. R. Trujillo also has an interest in confronting J. Trujillo to expose potential factual inconsistencies between Vigil's testimony, the New Mexico Complaint, and J. Trujillo's live testimony.  For instance, the United States sought to introduce evidence, through Vigil's testimony, that R. Trujillo threatened J. Trujillo with an AK47 rifle, but the New Mexico Complaint states that the police never found a weapon.  Compare Tr. 12:5-10 (Castellano, Vigil, Pugh); id. at 15:2-6 (Castellano, Vigil, Pugh), with New Mexico Complaint at 1.  In addition, in the New Mexico Complaint, a police officer wrote that he "did not observe any marks on [J. Trujillo's] arm consistent to what she was advising." U.S. Exhibit 2 at 1. See Tr. 15:2-16:9 (Pugh, Vigil).

The United States, moreover, fails to demonstrate good cause for not presenting J. Trujillo that is sufficient to outweigh R. Trujillo's interest in confronting her.  At the hearing, the United States did not explain why it did not call J. Trujillo as a witness.  See United States v. Jones, 818 F.3d at 1101 (concluding that the United States had not demonstrated good cause when the information it provided allowed the court only "to posit educated guesses without [the witness']

- 14 -

testimony").  The Court, accordingly, concludes that R. Trujillo's need to confront J. Trujillo outweighs the United States' good cause for her absence, and the Court, therefore, excludes, and does not rely on, Vigil's testimony and the New Mexico Complaint.

Because the Court cannot consider properly Vigil's testimony and the New Mexico Complaint, the Court does not have the record before it to find soundly by a preponderance of the evidence that R. Trujillo struck J. Trujillo on the nose or threatened her with an AK47 rifle.  Tenth Circuit, Criminal Pattern Jury Instructions at § 1.05.1 (2011)(Updated Feb. 2018)("Preponderance of evidence is evidence sufficient to persuade you that a fact is more likely present than not present."); "Preponderance of the Evidence," Black's Law Dictionary (10th ed. 2014).  The Court, accordingly, finds the evidence is insufficient to support a determination by a preponderance of the evidence that R. Trujillo committed battery of a household member. And the Court finds, therefore, that R. Trujillo did not violate the condition of his supervised release that he not commit a federal, state, or local crime.

## II.   THE COURT FINDS THAT A PREPONDERANCE OF THE EVIDENCE ESTABLISHES THAT R. TRUJILLO VIOLATED HIS SUPERVISED RELEASE CONDITIONS BY USING UNLAWFUL CONTROLLED SUBSTANCES.

The Court concludes that a preponderance of the evidence shows that R. Trujillo used an unlawful controlled substance; the Court largely relies on the fact that R. Trujillo tested positive five times on urinalysis tests.  The Court concludes that, under the United States v. Jones balancing test, it can consider properly the positive urinalysis test results.  See United States v. Jones, 818 F.3d at 1098.  Unlike J. Trujillo's possible live testimony, the urinalysis test results do not present the "generally recognized concerns with eyewitness testimony."  United States v. Jones, 818 F.3d at 1101.  R. Trujillo has not called the urinalysis test results' reliability into question, and the record does not suggest that the urinalysis test results lack reliability.  See United States v. Jones, 818 F.3d at 1101 (recognizing "[r]eliability is relevant to determine [the defendant's]

interest in confrontation"). Bias and general credibility determinations are also not at issue with the urinalysis test results. See United States v. Jones, 818 F.3d at 1098-101. Next, although the United States did not call the person who performed the urinalysis tests to testify at the revocation hearing, the United States called Vigil to testify about how the urinalysis tests were performed and what the results showed; therefore, on balance, the Court finds that it can consider properly the urinalysis test results. See United States v. Jones, 818 F.3d at 1101.

Generally, as here, supervised release conditions must include the mandatory requirement "that the defendant refrain from any unlawful use of a controlled substance." 18 U.S.C. § 3583(d); 18 U.S.C. § 3563 (a)(5)(same). Where a "defendant . . . as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year," courts are directed to revoke supervised release. 18 U.S.C. § 3583(g)(4). A "controlled substance" is "a drug or other substance, or immediate precursor," listed in Schedule I, II, III, IV, or V of the Controlled Substances Act. 21 U.S.C. § 802(6). See 21 U.S.C. § 812 (defining and listing drugs included in Schedules I-V); 21 C.F.R. §§ 1308.11-.15 (listing drugs included in Schedules I-V). Opiates and opium derivatives, such as morphine and codeine, as well as heroin are controlled substances. See 21 U.S.C. § 812; 21 C.F.R. §§ 1308.11-.15.

The Court concludes that R. Trujillo has tested positive for controlled substances five times since his release. On June 19, 24, 26, and 28, 2020 and July 8, 2020, R. Trujillo tested positive for opiates. See Tr. at 6:8-12; id. at 7:8-23 (Castellano, Vigil); Test Results at 1-5. On July 8, 2020, R. Trujillo's urinalysis test was positive for codeine and morphine. See Tr. at 8:11-24 (Castellano, Vigil). R. Trujillo admitted to Vigil that he used heroin on at least one occasion while on supervised release. See Tr. at 7:16-8:10 (Castellano, Vigil). R. Trujillo did not have prescriptions to substantiate these positive results. See Tr. at 8:25-9:1-4 (Castellano, Vigil). The

- 16 -

Court, therefore, concludes that R. Trujillo violated his supervised release condition that he refrain from unlawfully using controlled substances.

**IT IS ORDERED** that: (i) the Court revokes R. Trujillo's supervised release; (ii) R. Trujillo committed a Grade C Violation; and (iii) R. Trujillo has a criminal history category of IV, the Guidelines recommend a range of 6 to 12 months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
  United States Attorney
Randy Castellano
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Richard B Pugh
Law Office of Richard Pugh
Albuquerque, New Mexico

      *Attorney for the Defendant*